OPINION OF THE COURT
 

 Wesley, J.
 

 Twenty-six years have elapsed since Joseph Kaban was injured in an automobile accident during the course of his employment with Manhattan Boiler & Equipment Corp. This action, commenced by attorney Louis S. Reich, the assignee of the satisfaction of judgment in Mr. and Mrs. Kaban’s personal injury action, represents the Kabans’ second attempt before this Court to recover indirectly a portion of a third-party judgment that the defendants in the personal injury action obtained against Manhattan. The issue on this appeal is whether the satisfaction-of-payment method approved by this Court in
 
 Feldman v New York City Health & Hosps. Corp.
 
 (56 NY2d 1011,
 
 revg
 
 84 AD2d 166,
 
 for the reasons stated in
 
 107 Misc 2d 145) permits a plaintiff to recover indirectly from a third-party defendant when the third-party defendant is the original plaintiff’s employer. We conclude that the use of a
 
 Feldmantype
 
 loan agreement in a case where the third-party defendant is the original plaintiff’s employer directly conflicts with the public policy considerations of the exclusivity of the workers’ compensation remedy and should be disallowed.
 

 Following the accident in 1972, Kaban received workers’ compensation benefits from his employer’s insurance carrier.
 
 [1]
 
 Kaban and his wife sued John H. Thompson and the Public Administrator of New York County, as representative of Ralph Mazza, deceased, the other parties involved in the motor vehicle accident. Thompson and Mazza’s estate brought a third-
 
 *776
 
 party action against defendant Manhattan and Kaban’s fellow employee, Andre Nosaniuk, the driver of the vehicle owned by Manhattan. The case went to trial and the jury apportioned liability between Manhattan and Nosaniuk (25%) and Thompson and Mazza (75%). Appeals ensued.
 

 In 1977, this Court considered the Kaban case under the consolidated title of
 
 Klinger v Dudley
 
 (41 NY2d 362,
 
 modfg Valentino v Thompson,
 
 52 AD2d 601). We modified the judgment for contribution from Manhattan to require that Thompson’s third-party judgment against Manhattan be conditioned upon his payment of the primary judgment to the Kabans. Because both Thompson and Mazza were insolvent, the Kaban judgment went unenforced and uncollected.
 
 [2]
 

 In 1992, plaintiff Louis S. Reich, an attorney, decided to implement the
 
 Feldman
 
 formula to try to collect on the Kaban judgment. Using
 
 Feldman
 
 as their script, the Kabans, Thompson and plaintiff entered into a loan agreement, pursuant to which plaintiff agreed to loan Thompson the sum of $1,213,402.67, which plaintiff calculated to be the principal owed to the Kabans on their judgment, plus statutory interest from December 5, 1974 until April 1, 1992. In consideration for the loan, Thompson agreed (a) to use the entirety of the loan proceeds to satisfy the Kaban judgment; (b) to execute a promissory note in favor of plaintiff for the amount of the loan; (c) to assign his right, title and interest in his third-party judgment to plaintiff for the purposes of enforcement, and (d) to assign any satisfaction of the primary judgment received from the Kabans to plaintiff. The loan agreement required the Kabans to guarantee Thompson’s note, in return for which plaintiff agreed to pay the Kabans 95% of any recovery plaintiff obtained in an action against defendant Manhattan to enforce the third-party judgment.
 

 All the necessary documents were executed on April 1, 1992. Plaintiff drew a check on the account of his law firm payable to the order of Thompson in the sum of $1,213,402.67. The check was tendered to Thompson who endorsed it over to the Kabans, who in turn endorsed the check back to plaintiff’s law firm to be held in escrow. The Kabans then tendered satisfactions of judgment and general releases in favor of Thompson. The escrow was ultimately released and the funds were repaid
 
 *777
 
 to plaintiff, thus discharging Thompson’s debt and the Kabans’ obligation.
 

 Plaintiff commenced this action against Manhattan seeking to enforce the third-party judgment. Plaintiff thereafter moved for summary judgment seeking $303,353.13 (which represented Manhattan’s proportionate share under the third-party judgment), plus statutory interest from April 1, 1992. Manhattan cross-moved for summary judgment dismissing the complaint, and also moved to compel joinder of Joseph Kaban as a necessary party plaintiff.
 

 Supreme Court granted plaintiff’s motion and entered judgment in favor of plaintiff with interest from April 1, 1992 and denied Manhattan’s motion and cross motion. The court noted that the agreement in this case was “simply a loan arrangement similar to the one sanctioned in
 
 Feldman v New York City Health & Hosps. Corp.”
 
 The court concluded that the exclusivity of workers’ compensation was not a bar to plaintiff’s claim “under the limited loophole sanctioned by the Court of Appeals in
 
 Feldman.”
 
 The Appellate Division affirmed, holding that
 
 Feldman
 
 authorized the transaction (240 AD2d 262). We granted Manhattan’s motion for leave to appeal, and now reverse.
 
 [3]
 

 The transaction upheld by this Court in
 
 Feldman v New York City Health & Hosps. Corp.
 
 (56 NY2d 1011, supra) involved a loan arrangement similar to that used by the parties in this case. The inspiration for the loan mechanism came from a law review article (Farrell,
 
 Civil Practice,
 
 29 Syracuse L Rev 449, 488-489) which offered it as a solution to the problems plaintiffs faced as a result of this Court’s decision in
 
 Klinger v Dudley
 
 (41 NY2d 362,
 
 supra).
 
 Plaintiff Reich contends that the
 
 Feldman
 
 mechanism is of general applicability and, thus, can be implemented in any situation involving a contribution claim against a third-party defendant — even a third-party defendant otherwise insulated from direct liability to a plaintiff because of the exclusivity of the workers’ compensation remedy. We disagree.
 

 In response to an argument put forth by the Kabans in
 
 Klinger
 
 in 1977
 
 (Klinger v Dudley, supra,
 
 at 370), we noted that although this Court’s decision in
 
 Dole v Dow Chem. Co.
 
 
 *778
 
 (30 NY2d 143) allowed a defendant to seek indemnification/ contribution from the injured plaintiffs employer,
 
 Dole
 
 did not create a new direct right of recovery for a plaintiff/employee against the third-party defendant employer. “[T]he wrong that
 
 Dole
 
 remedied was one to tort-feasors, and not to plaintiffs”
 
 (Klinger v Dudley, supra,
 
 at 370). Thus,
 
 Klinger
 
 prohibited the Kabans from recovering directly against Manhattan.
 

 The
 
 Feldman
 
 loan agreement was sanctioned for the limited purpose of alleviating the burdens created by
 
 Klinger
 
 in the specific factual circumstances of
 
 Feldman (see,
 
 107 Misc 2d, at 150-152). In
 
 Feldman,
 
 the plaintiff in the underlying personal injury action brought claims against the driver and owner of the vehicle involved in the automobile accident in which plaintiff was injured and against the doctor who treated (and aggravated) his injuries. The defendants brought third-party claims against the hospital where plaintiff was treated. For some unknown reason, plaintiff never raised a direct claim against the hospital. The jury apportioned liability as follows: driver/owner 10%; doctor 36%; hospital 54%
 
 (id.,
 
 at 147). The trial court noted that as a result of
 
 Klinger,
 
 a plaintiff who failed to assert a direct claim against a third-party defendant “[m]ust * * * sit idly by with a large uncollectible judgment without recourse to anyone except perhaps [his or her] attorney”
 
 (id.,
 
 at 152). In that situation, the third-party defendant/tortfeasor “[irrespective of its degree of fault and the jury’s finding of culpability and liability, and notwithstanding its ability to pay * * * may escape without having to pay a single dollar of the judgment against it”
 
 (id.,
 
 at 151). Thus, the equitable solution fashioned and allowed in
 
 Feldman
 
 was to permit that particular plaintiff to recover through the use of a loan arrangement between the parties that would, on a superficial level, satisfy
 
 Klinger.
 

 Even
 
 Feldman
 
 recognized, however, that there were instances under
 
 Klinger
 
 where a plaintiff would not have a direct claim against a third-party defendant
 
 (id.,
 
 at 150). This case is distinguishable from
 
 Feldman
 
 for that very reason. In this case, the Kabans were prevented from asserting a claim against Manhattan by the Workers’ Compensation Law
 
 (see,
 
 Workers’ Compensation Law § 11). As we stated in Klinger:
 

 “That the workings of fate result in plaintiffs Kaban being limited to a recovery under [workers’] compensation and a relatively small amount of insurance proceeds from main defendants * * *
 
 *779
 
 should not be a basis for allowing an indirect recovery by plaintiffs against the employer and co-employee in this case * * * To some, this result may seem unfair, but in fact it is in keeping with the events as they have unfolded.
 
 Plaintiffs Kaban were entitled to recovery against the employer and the estate of their coemployee under [workers’]
 
 compensation”
 
 (Klinger v Dudley, supra,
 
 41 NY2d, at 370-371 [emphasis added]).
 

 The public policy considerations behind the workers’ compensation system trigger the application of the exclusive workers’ compensation remedy, and prevent Reich (and the Kabans) from recovering from Manhattan. The
 
 Feldman
 
 arrangement is inapplicable to this particular case.
 

 The scheme sanctioned in
 
 Feldman,
 
 if applied to a situation where the third-party defendant is the plaintiffs employer, would blatantly undermine the exclusivity of the workers’ compensation remedy. This Court has strictly adhered to the basic proposition that when an employee is injured in the course of employment, the sole remedy for the employee lies in the Workers’ Compensation Law
 
 (see, Billy v Consolidated Mach. Tool Corp.,
 
 51 NY2d 152, 156; Workers’ Compensation Law §§ 11, 29 [6]). The Workers’ Compensation Law was enacted to guarantee an injured employee scheduled compensation regardless of fault in exchange for reduced costs and risks of litigation
 
 (see, Gonzales v Armac Indus.,
 
 81 NY2d 1, 8).
 

 Only one indirect “exception” to the exclusivity provisions of the Workers’ Compensation Law has been recognized by this Court. In
 
 Dole v Dow Chem. Co.
 
 (30 NY2d 143,
 
 supra),
 
 we permitted defendants to assert a claim for indemnification/ contribution against a plaintiffs employer for damages arising from work-related injuries “to avoid inequity to a defendant left with the total bill for a plaintiffs injuries because of the mere happenstance that the other tortfeasor was the plaintiffs employer and therefore immune from direct suit”
 
 (see, Gonzales, supra,
 
 81 NY2d, at 8, citing
 
 Sommer v Federal Signal Corp.,
 
 79 NY2d 540, 558).
 

 We have maintained a tight rein on the scope of the “exception,” and have resisted many attempts to breach the wall of exclusivity of the workers’ compensation remedy. As noted above, in
 
 Klinger
 
 we rejected the notion that the
 
 Dole
 
 concept of apportionment should be implemented on the basis of “ ‘indemnification’ against
 
 liability
 
 rather than ‘indemnification’ against
 
 loss
 
 by the main defendants”
 
 (supra,
 
 41 NY2d, at
 
 *780
 
 370 [emphasis in original]). In
 
 Billy v Consolidated Mach. Tool
 
 Corp., we repudiated the “dual capacity” doctrine which would have allowed employees to sue employers directly in their capacity as property owners or manufacturers, stating that to do so would seriously undermine “the salutary social purposes underlying the existing workers’ compensation scheme if we were to permit common-law recovery outside of that scheme on the basis of such illusory distinctions”
 
 (see, Billy v Consolidated Mach. Tool Corp., supra,
 
 51 NY2d, at 160). In
 
 Heritage v Van Patten
 
 (59 NY2d 1017, 1019), we disallowed suit against a coemployee/property owner under Labor Law § 241 because of the exclusivity of the workers’ compensation remedy against a coemployee, stating that the workers’ compensation statute, “ ‘having deprived the injured employee of a right to maintain an action against a negligent coemployee, bars a derivative action which necessarily is dependent upon the same claim of negligence for which the exclusive remedy has been provided’ ” (quoting
 
 Rauch v Jones,
 
 4 NY2d 592, 596).
 

 Finally, in
 
 Gonzales v Armac Indus.
 
 (81 NY2d 1,
 
 supra),
 
 plaintiff and defendant entered into a pretrial agreement that apportioned a small percentage of liability to defendant but left the issue of damages to the jury. Plaintiff agreed not to enforce any judgment against defendant in excess of defendant’s proportionate liability. In addition, the agreement provided for a loan from defendant to plaintiff “ ‘to permit the plaintiff to collect any monies from the third-party defendant [employer] in the event that there [was] an apportionment of liability against the third-party defendant by the jury’ ”
 
 (id.,
 
 at 5). We concluded that the agreement was a release under General Obligations Law § 15-108 (which prevented defendant from pursuing its third-party claim against plaintiffs employer) and was distinguishable from a
 
 Feldman
 
 agreement. We also noted that the agreement was, in effect, an attempt to sell defendant’s contribution claim against plaintiff’s employer to plaintiff and thereby avoid the exclusivity of the Workers’ Compensation Law. As we indicated in
 
 Gonzales,
 

 “Approval of the practice would jeopardize the workers’ compensation system, violating the balance embodied in the law, by holding employers subject to the no-fault liability envisioned by the statute but denying them the protection from tort actions and large damage verdicts which the statute was intended to foreclose * * * The rationale
 
 *781
 
 for the rule in
 
 Dole v Dow Chem. Co. (supra)
 
 was to achieve an
 
 equitable result between defendants.
 
 It did not signal a move to expose employers to tort liability so that an employee could obtain a recovery from an employer in excess of workers’ compensation benefits. Agreements such as the one presented here do just that, enabling an employee
 
 to do indirectly that which cannot be done directly, to reach beyond impecunious or insolvent defendants and into an employer’s deep pockets” (id.,
 
 at 9 [citations omitted] [emphasis added]).
 

 To expand
 
 Feldman
 
 to third-party judgments against employers/coemployees as in this case would seriously jeopardize the exclusivity of the workers’ compensation remedy, undercut the policy considerations on which that remedy is based and revive thousands of judgments long since written off. The Kabans’ attempt to create direct liability against Mr. Kaban’s employer through an intricate loan/assignment transaction cannot be allowed to circumvent the limitations of an employer’s liability for contribution defined by
 
 Klinger
 
 over 21 years ago. Absent a direction from the Legislature, which is far better equipped to assess the risk, we will not further extend Feldman.
 
 [4]
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, with costs, and defendant’s cross motion for summary judgment dismissing the complaint granted.
 

 [1]
 

 . Kaban’s coemployee, Joseph Valentino, was also injured as a result of the accident. The Kaban and the Valentino cases were tried under the consolidated title of
 
 Valentino v Thompson (see, 52
 
 AD2d 601). The Valenti-nos then settled and, thereafter, withdrew their appeal to the Appellate Division
 
 (see, Klinger v Dudley,
 
 41 NY2d 362, 367, n 2).
 

 [2]
 

 . Prior to their appeal to the Appellate Division, the Kabans had recovered $20,000 in insurance proceeds from Thompson and the Mazza estate (see,
 
 Klinger v Dudley, supra,
 
 41 NY2d, at 367).
 

 [3]
 

 . The Appellate Division also resolved two additional issues — the scope of the workers’ compensation lien and the calculation of interest on the judgment — that were decided by Supreme Court. We need not address either issue in light of our determination.
 

 [4]
 

 . The Legislature has chosen to restrict the application of
 
 Dole v Dow
 
 with the enactment of the Omnibus Workers’ Compensation Reform Act of 1996, limiting claims for contribution and indemnification against an employer only to those involving “grave injuries” as defined by the Act (see, Workers’ Compensation Law § 11, as amended by the Omnibus Workers’ Compensation Reform Act of 1996, L 1996, ch 635, § 2).